DANIEL J. CONNOLLY AND JENNIFER C. CONNOLLY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Connolly v. Commissioner
Docket No. 11827-91
United States Tax Court
T.C. Memo 1993-103; 1993 Tax Ct. Memo LEXIS 104; 65 T.C.M. (CCH) 2139; March 24, 1993, Filed *104 Daniel J. Connolly, pro se. For respondent: Paul Colleran. PETERSON
PETERSON
MEMORANDUM FINDING OF FACTS AND OPINION PETERSON, Special Trial Judge: This case was assigned pursuant to section 7443A(b) and Rules 180, 181, and 182. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined a deficiency in petitioners' Federal income tax for the taxable 1986 in the amount of $ 8,556, and additions to tax for negligence attributable to the deficiency under section 6653(a)(1)(A) and (B) in the respective amounts of $ 428 and 50 percent of the interest due on the entire amount of the deficiency. The issues for decision are whether petitioners are entitled to a deduction for legal and professional services in excess of the amount conceded by respondent, and whether petitioners are liable for the additions to tax for negligence. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioners resided in Concord, New Hampshire, at the time *105 their petition was filed. For the taxable year 1986, petitioners claimed a deduction in the amount of $ 22,902 for legal and professional fees paid in 1984, of which respondent concedes that petitioners are entitled to a deduction of $ 402. Petitioners contend that the balance in the amount of $ 22,500 is deductible because the payment was made to allow petitioner Daniel J. Connolly (hereinafter petitioner) to maintain his employment with the law firm of Sulloway, Hollis & Soden (Sulloway) in Concord, New Hampshire. Petitioner was admitted to practice law in New Hampshire during 1972. Sometime during 1982, he was employed by the Sulloway firm where he continued to practice law until his employment was terminated on May 31, 1985. Petitioner's practice was primarily related to estate planning, tax planning, and corporate planning. As a part of his practice, petitioner acted as a fiduciary for estates and trusts. During his tenure at Sulloway, and prior thereto, petitioner represented Mrs. Ruth E. Smead in preparing certain trust documents and her will. Petitioner was the trustee of a revocable trust agreement he prepared for Mrs. Smead during 1980, and was named as the executor *106 of her will. Petitioner also held a power of attorney from Mrs. Smead which was used by petitioner to write checks on her personal checking account to assist Mrs. Smead with her financial affairs. During the period beginning in April 1983 through July 1984, petitioner received 7 checks from Mrs. Smead's trust account and her personal checking account which totaled $ 32,900. The amounts received were gifts made to petitioner by Mrs. Smead because she wanted to help petitioner with certain personal financial problems. Petitioner treated the above amounts as gifts and did not report the amounts received as income at any time. Some time after receiving the above amounts Mrs. Smead decided to move to California to live near her son and to improve a previously strained relationship over financial matters. Petitioner's relationship with Mrs. Smead's son was also strained and unfriendly because of petitioner's complete involvement in Mrs. Smead's financial affairs and the fact that petitioner had prepared a will for Mrs. Smead which had disinherited her son. As a result of Mrs. Smead's move to California, it was necessary to appoint a successor trustee to replace petitioner as the *107 trustee of her revocable trust. During September 1984, a successor trustee was appointed to succeed petitioner. Because of his poor relationship with Mrs. Smead's son and to avoid an unpleasant confrontation with him, petitioner decided he would cover up the fact that he had received the gifts from Mrs. Smead. Accordingly, he prepared a false final accounting for the trust and the personal checking account. In the final accounting petitioner inaccurately reported $ 8,500 more as medical expenses and legal fees than was correct, rather than as a part of the gifts he had received. After receiving an inquiry from Mrs. Smead's new trustee concerning the accuracy of the above items in the final accounting, petitioner mailed a letter to the trustee which admitted that the accounting was incorrect. Petitioner reported that the amounts in question had in fact been improperly transferred from Mrs. Smead's personal checking account to other trust accounts being handled by the Sulloway firm. Petitioner suggested that the transfers appeared to be an embezzlement by someone in the Sulloway firm. The letter was a complete fabrication and was sent in order to cover up the fact that petitioner *108 had failed to report in the final accounting that during the period from March 1984 to June 1984, he had received three checks in the total amount of $ 10,400 which he had written on Mrs. Smead's personal checking account under his power of attorney. Along with his letter to the trustee petitioner enclosed a check in the amount of $ 10,738.06 to cover the above amount plus interest. Subsequently, petitioner reported the false accounting to his firm and, in turn, the false accounting was reported to the Professional Conduct Committee of the New Hampshire Supreme Court (Committee). Petitioner also disclosed to the Sulloway firm the balance of the gifts he had received from Mrs. Smead. On October 12, 1984, Sulloway informed Mrs. Smead's trustee of the gifts and that it was against firm policy to accept gifts from clients and issued a check to the trustee in the amount of $ 22,500, which was the balance of the amount petitioner had received from Mrs. Smead's accounts. Petitioner was not consulted as to whether or not the money should be returned to the trustee. Petitioner was informed that it was against firm policy to accept gifts from clients and that the firm had reimbursed the *109 trust. Further, petitioner was told that he would have to reimburse Sulloway for the $ 22,500 payment made to the trust. Petitioner subsequently executed a promissory note during 1984 in favor of Sulloway in the amount of $ 22,500 to reimburse the firm for its expenditure. Petitioner contends he was not aware of the gift policy, but felt that he had to sign the note in order to continue his employment with the firm. It was petitioner's understanding that he would be able to practice law with the firm until a petition was filed by the Committee with the New Hampshire Supreme Court to either suspend or disbar petitioner from the practice of law for professional misconduct. Petitioner made principal payments on the note during 1984 and 1985 in the total amount of $ 75. Petitioner also made principal payments on the note during 1986 in the total amount of $ 4,266.38. As of December 31, 1986, there was an outstanding balance due on the note in the amount of $ 18,158.62. After the Committee received the report that petitioner had filed a false accounting for the Smead trust and the personal checking account, a full investigation was made of all of petitioner's fiduciary accounts. *110 The investigation revealed that in addition to petitioner's admission that he filed a false accounting for the Smead trust and the personal checking account, it was determined that he also withdrew funds for his own personal use from five other fiduciary accounts over which he had authority to write checks. On May 15, 1985, the Committee filed a petition with the New Hampshire Supreme Court recommending that petitioner be suspended from the practice of law for 6 months. On August 14, 1985, the New Hampshire Supreme Court temporarily suspended petitioner from the practice of law. On April 9, 1986, petitioner was disbarred from the practice of law by the New Hampshire Supreme Court for the misuse of client's funds. Because petitioner was disbarred from the practice of law for the misuse of client's funds, no action was taken on the complaint filed for the false accounting made in the Smead matter. OPINION Petitioners argue that the amount of $ 22,500 is deductible as an ordinary and necessary expense on the ground that petitioner executed the note to allow him the opportunity to continue to practice law with the Sulloway firm. Petitioners contend the amount is deductible in *111 1986, the year petitioner was disbarred from the practice of law by the New Hampshire Supreme Court. Petitioners reason that the payment was a capital expenditure with no ascertainable useful life because it was made to allow petitioner the right to continue to practice law. On this basis petitioners argue that the amount became deductible when petitioner was disbarred from the practice of law in 1986. Respondent argues that the amount in dispute is not deductible on the ground that petitioners did not include such amount in income. In addition, respondent argues that any deduction would be allowable only in 1984, the year the amount was paid to the trust by the firm on petitioner's behalf. We agree with respondent that the amount in dispute is not deductible. We also agree with respondent that unless an item is included in income in the first instance, a deduction is not allowed when the amount is repaid. See . In addition, we agree with respondent that because petitioners are on the cash basis method of accounting the amount would be deductible, if at all, in 1984, when it was paid with funds received *112 from the Sulloway loan. ; , affd. . However, we conclude that the $ 22,500 payment made to the trust is not deductible for the basic reason that petitioner did not incur an expense, but simply returned the funds he had previously received by gift. Petitioners contend that the amount paid was a capital expenditure which was incidental to petitioner's employment with Sulloway and that it was deductible when petitioner could no longer practice law. Assuming, arguendo, that the payment was an employment-related capital expenditure, the amount would properly be deductible in 1985 when petitioner's employment with Sulloway was terminated, not in 1986, when petitioner was disbarred from the practice of law. Clearly, the payment was not made to continue to practice law in New Hampshire, but, at most, to continue to practice with Sulloway. Additions to Tax
Respondent determined that petitioners are liable for the additions to tax for negligence under section 6653(a)(1)(A) *113 and (B). Section 6653(a)(1)(A) imposes an addition to tax if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(1)(B) imposes an additional amount, but only with respect to the portion of the underpayment attributable to the negligence. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. . Petitioners have the burden of proof to show that they were not negligent. . Petitioners contend that they were not negligent in that the position taken with regard to the deduction claimed for the amount paid to the trust was reasonable and made in good faith. We do not believe that petitioner, who is a lawyer with considerable experience in business and tax matters, acted in good faith in claiming the deduction under the circumstances of this case. Petitioners argue that the repayment of the gift was made to prolong his right to practice law and to continue his employment with Sulloway, *114 and that it was deductible when he was disbarred in 1986, because he could no longer practice law. However, as stated above, the payment had nothing to do with the disbarment proceedings, but was made to return the gifts to Mrs. Smead because it was against the policy of Sulloway for any lawyer to accept gifts from clients. Petitioners have either carelessly ignored or have attempted to disguise the fact that the true nature of the payment was clearly a part of the gift transaction and not an unrelated payment for legal services incurred to protect his right to practice law. Further, we note that petitioners claimed the amount on their income tax return as a deduction for legal or professional services without an explanation of the true nature of the payment which is further evidence of an attempt to conceal the true nature of the payment made to Mrs. Smead. It is clear that the payment was not for legal or professional services and that petitioners failed to use due care when they claimed a deduction for such services on their return. Accordingly, we sustain respondent's determination that petitioners are liable for the additions to tax for negligence. Decision will be entered *115 under Rule 155.